IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY DIANA DIPLEY-WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.12-03467-CV-S-REL-SSA |
| ) | |
| CAROLYN COLVIN, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Ashley Diana Dipley-Watson seeks review of the final decision of the Commissioner of Social Security denying plaintiff's applications for disability benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) did not give proper weight to the medical opinion of her treating rheumatologist and (2) failed to adopt a residual functional capacity (RFC) that reflected the functional limitations noted by the rheumatologist. I find that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

I. *COMMISIONER'S DECISION*

On December 4, 2009, plaintiff filed her applications for disability insurance benefits and supplemental security income. Plaintiff alleged disability since September 30, 2009 due to a combination of physical and mental impairments (Tr. 167-70, 171-78). On December 11, 2009 and January 28, 2010, plaintiff's claim was denied at the initial level (Tr. 66-73, 74-80). On July 20, 2011, a hearing was held before the ALJ (Tr. 27-51). On August 25, 2011, the ALJ found that plaintiff was not under a disability as defined in the Act (Tr. 8-26). On August 31, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-6). Therefore, the August

25, 2011 decision of the ALJ stands as the final decision of the Commissioner.

## II.     STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id. Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III.    BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

    Yes = disabled.
    No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.
    Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

Yes = disabled.
No = not disabled.

## IV. THE RECORD

The record consists of the testimony of plaintiff and Dan R. Zumalt, M.S., Q.R.P., a vocational expert, at the July 20, 2011 hearing, in addition to documentary evidence admitted at the hearing.

### A. ADMINISTRATIVE REPORTS

The record contains an earnings report, which shows plaintiff earned the following income from 1998 to 2009:

| Year | Earnings | Year | Earnings |
|---|---|---|---|
| 1998 | $ 118.45 | 2004 | $ 2,711.19 |
| 1999 | 2,458.20 | 2005 | 11,678.12 |
| 2000 | 4,765.87 | 2006 | 12,779.89 |
| 2001 | 9,075.65 | 2007 | 19,471.90 |
| 2002 | 5,813.98 | 2008 | 20,734.86 |
| 2003 | 1,341.62 | 2009 | 6,822.92 |

(Tr. 183).

### B. SUMMARY OF MEDICAL RECORDS

As summarized by plaintiff, the medical record reflects diagnosis and treatment of multiple medical problems including fibromyalgia, bipolar disorder, borderline personality disorder, and history of poly-substance abuse.

### C. SUMMARY OF TESTIMONY

During the July 20, 2011 hearing, plaintiff and Dan R. Zumalt, M.S., Q.R.P., a vocational expert, testified.

1.  **Plaintiff's Testimony**

Plaintiff testified that she is unable to work due to her fibromyalgia pain that is centered in her tailbone. Plaintiff reported that she spends her waking hours "trying to cope with [her] pain" (Tr. 36). Plaintiff stated that, to relieve her pain during the day, she sits on her bed on a pillow for up to an hour at a time and sometimes needs to lie down (Tr. 36).

When asked about her daily activities, plaintiff related that, other than sitting or lying in bed, she can prepare simple meals, do small loads of laundry, and drive two days a week (Tr. 37). Plaintiff said that she lives with her mother, that she and her mother share household chores, but that her mother is also disabled by fibromyalgia (Tr. 37).

2.  **Vocational Expert's Testimony**

Dan R. Zumalt, M.S., Q.R.P, a vocational expert, testified at the request of the ALJ. Previously, the expert classified plaintiff's past relevant:

- Coffee maker as medium as defined in the Dictionary of Occupational Titles (DOT), light as performed by plaintiff, and unskilled;
- Customer service representative as sedentary both as defined in the DOT and as performed by plaintiff, and skilled;
- Bagger as medium as defined by the DOT, light as performed by plaintiff, and unskilled;
- Fast-food worker as light both as defined in the DOT and performed by plaintiff, and unskilled;
- Customer service representative (financial) as being light as defined in the DOT, sedentary as performed by plaintiff, and skilled; and
- Document preparer-microfilming as sedentary both as defined in the DOT and performed by plaintiff, and unskilled (Tr. 265).

5

At the hearing, the expert opined that there was no change to his classification of plaintiff's past relevant work (Tr. 40).

The ALJ posed a hypothetical question with a limitation to sedentary work (Tr. 40). The hypothetical individual was limited to simple, unskilled work with no contact with the general public (Tr. 40). The expert opined that the hypothetical individual could return to plaintiff's past relevant work of document preparer-microfilming and could perform other sedentary unskilled jobs including bonder semi-conductor, touch-up screener circuit-board assembler, and dowel inspector (Tr. 40-41).

When asked to assume the limitations set forth in a February 28, 2011 *Medical Source Statement-Physical* form completed by plaintiff's rheumatologist (Tr. 630-32), the expert opined that a hypothetical individual with the cited limitations would be unable to return to any of plaintiff's past relevant work or any other jobs that exist in significant numbers in the national economy (Tr. 41).

However, when asked to assume the limitations set forth in a February 14, 2011 *Medical Source Statement-Mental* form completed by plaintiff's psychiatrist (Tr. 604-06), the expert opined that a hypothetical individual with the cited limitations would be able to return to all of plaintiff's past relevant work. Furthermore, the expert opined that such an individual would be able to perform sedentary unskilled jobs including patcher, lens inserter, touch-up screener-printed circuit-board assembler, and bonder semi-conductor (Tr. 42-44)

Finally, the ALJ asked the expert to assume the limitations set forth in the February 28, 2011 *Medical Source Statement-Physical* form completed by plaintiff's rheumatologist (Tr. 630-32) but modified it with the sitting, standing, walking, lifting, and carrying limitations allowed for sedentary work. In response to this hypothetical question, the expert opined that such

an individual would be able to perform sedentary jobs including travel clerk, insurance clerk, callout operator, and wire transfer clerk (Tr. 44-49).

## V.     FINDINGS OF THE ALJ

ALJ Michael A. Lehr entered his decision on August 25, 2011. The ALJ found that plaintiff has not engaged in substantial gainful activity since September 30, 2009, her alleged disability onset date, because any work after that date was brief and did not rise to the level of substantial gainful activity (Tr. 13). The ALJ found that plaintiff's fibromyalgia, bipolar disorder, borderline personality disorder, and poly-substance abuse disorder reportedly in remission, are severe impairments (Tr. 13); that plaintiff's hypothyroidism and migraines are non-severe impairments (Tr. 13-14); and that no impairment meets or equals the severity requirements of any Listing (Tr. 14-15). The ALJ determined that plaintiff retains the ability to perform a wide range of sedentary work (Tr. 15-19); that plaintiff could return to her past relevant work of customer-service representative, customer-service representative (financial), and document preparer (microfilming) (19-20); and that plaintiff could perform other jobs existing in significant numbers in the national economy (Tr.20-21). The ALJ found plaintiff is not disabled (Tr. 21).

## VI.    ANALYSIS

### A.    WEIGHING MEDICAL OPINIONS

Plaintiff argues that a *Medical Source Statement-Physical* completed by her rheumatologist deserves controlling weight, or at least greater weight than was accorded by the ALJ.

Defendant responds that the ALJ considered the objective medical evidence, plaintiff's credibility, plaintiff's daily activities, and inconsistencies between plaintiff's testimony and other

7

statements in the file, and that these factors support the ALJ's decision to give the rheumatologist's opinion less weight.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, describing what an individual can do despite a severe impairment, specifically an individual's physical or mental abilities to perform work-related activities on a sustained basis. Social Security Ruling (SSR) 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight than the opinions of a source who has not examined the individual. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

An ALJ "'is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [plaintiff's] physicians.'" Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (quoting Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)).

The Eight Circuit has acknowledged that a plethora of opinions, "admittedly send mixed signals about the significance of a [plaintiff's] daily activities in evaluating claims of disabling pain" Clevenger v. Soc. Sec. Admin., 567 F.3d. 971, 976 (8th Cir. 2009); and that, for example, "[t]he ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) (citing Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998). Nevertheless, a plaintiff's activities should be considered by the ALJ, and a reviewing court should evaluate the ALJ's credibility determination based in part on daily activities using the substantial-evidence standard. McDade v. Astrue, 720 F.3d 934, 998 (8th Cir. 2013).

Here, Joseph Mayus, M.D., plaintiff's rheumatologist, completed a *Medical Source Statement-Physical* form at the request of plaintiff's counsel on February 28, 2011. The physician opined that plaintiff is significantly limited in almost all exertional activities and suggested that her combined sitting, standing, and walking should be limited to less than eight hours a day (Tr. 604-06). I note that this is a "check-box" form with no explanation given for the limitations listed. I find this significant because, as the ALJ noted, clinical examinations performed by Dr. Mayus, except for tender points, are consistently unremarkable. The ALJ acknowledged that there is no laboratory test or clinical sign that is definitive for fibromyalgia; however, the judge noted an absence of decreased range of motion, disuse atrophy, decreased muscle strength, swelling, or gait abnormalities that one would expect to accompany the level of complaints asserted by plaintiff. I note that Dr. Mayus' examinations on both February 4, 2011 (Tr. (595-97) and March 1, 2011 (Tr. 633-36), immediately before and after the physician's opinion, were benign except for the tender points and plaintiff's subjective complaints.

The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts. Rautio v. Bowen, 862 F.2d 176, 178 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If there are inconsistencies in the record as a whole, the ALJ may discount subjective complaints. Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The ALJ, however, must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). If an ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. Id. at 841.

Subjective complaints may not be evaluated solely on the basis of objective medical evidence or personal observations by the ALJ. In determining credibility, consideration must be given to all relevant factors including: plaintiff's prior work record; observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Social Security Ruling 96-7p encompasses the same factors as those enumerated in the Polaski opinion, and additionally states that the following factors should be considered: treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board).

In this case, the ALJ noted the failure of the objective medical evidence to support plaintiff's complaints. The ALJ also observed the inconsistencies between plaintiff's allegations at the hearing and her statements to her treatment sources, and discrepancies between plaintiff's descriptions of her daily activities during the hearing and her statements to her treating sources.[1]

While plaintiff points out on appeal that fibromyalgia symptoms can wax and wane, this waxing and waning is not reflected in plaintiff's complaints to Dr. Mayus. Specifically, most of Dr. Mayus's office-visit notes state that there was no change in plaintiff's complaints.

Although plaintiff was followed by a rheumatologist, she was never hospitalized for treatment of her fibromyalgia and made no emergency room visits for any falls or other problems. Plaintiff did not require an assistive device for ambulation, a wrist splint, a knee brace, a back brace, a cervical collar, or a TENS unit. Plaintiff never attended a pain clinic or a

---

[1] While an individual need not be bed bound to be found disabled, consideration of daily activities is

work-hardening program. Although plaintiff used prescription anti-pain medication, she did not receive any injections. Additionally, as noted by the ALJ, Dr. Mayus recommended that plaintiff engage in mild exercise.

The ALJ found that plaintiff suffers from fibromyalgia, but concluded that it does not cause the limitations she claims. The administrative regulations do not require a plaintiff to be symptom-free in order to be found not disabled. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (the mere presence of a mental disturbance is not disabling *per se*, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity). Although plaintiff was on prescribed antidepressant drugs, this is no evidence that this mental impairment was disabling. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (prescription of antidepressant drugs does not show that the claimant is disabled).

I find that substantial evidence on the record supports the ALJ's determination of the weight to be given to Dr. Mayus' opinion.

**B.     RFC DETERMINATION**

Plaintiff argues that the ALJ's RFC is not based on a specific medical source because he adopted his own interpretation of the medical evidence without the benefit of any corroborating treating or examining medical opinion evidence to support him.

"The ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (quoting Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)). Instead, the Eighth Circuit has noted that RFC is a determination based on *all* of the record evidence. See Pearsall v Masanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir. 2000) (per curiam) (citing 20 C.F.R. § 404.1545 and Social Security Ruling (SSR) 96-8p at 8-9). The RFC

---

important in evaluating subjective complaints such as pain, need to lie down, etc.

formulation is a part of the medical portion of the disability adjudication as opposed to the vocational portion, which involves consideration of age, education, and work experience. Although the RFC is a medical question, it is not based only on "medical" evidence (i.e., evidence from medical reports or sources). Instead, an ALJ has the duty to formulate RFC based on all the relevant and credible evidence of record. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (noting that the Commissioner must determine a plaintiff's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000); 20 C.F.R. § 416.925; SSR 96-8p.

In this case, plaintiff submitted the February 14, 2011 *Medical Source Statement-Mental* form completed by James E. Bright, M.D., plaintiff's psychiatrist (Tr. 604-06). The ALJ gave this opinion controlling weight (TR. 19) and incorporated the psychiatrist's limitations into plaintiff's RFC. (Tr. 15). At the hearing, the vocational expert opined that the mental limitations would not prevent a hypothetical individual from performing all of plaintiff's past relevant work and identified other sedentary unskilled occupations that the such individual could perform (Tr. 42-44). Plaintiff does not challenge this finding.

Instead, plaintiff bases her objections on the ALJ's failure to incorporate all of the limitations Dr. Mayus included in his February 28, 2011 *Medical Source Statement-Physical* form (Tr. 630-32). As noted above, after considering all of the medical evidence, plaintiff's daily activities, plaintiff's credibility, inconsistencies between plaintiff's testimony and previous statements, and the level of treatment, the ALJ properly gave less weight to Dr. Mayus' opinion (Tr. 18). The ALJ limited plaintiff to sedentary work with further restrictions on her lifting, carrying, walking, and standing (Tr. 15). The ALJ's RFC was so restrictive that the vocational expert indicated that it would prevent plaintiff's return to her some of her past jobs such as

coffee maker, bagger, and fast-food worker (Tr. 40-41).

Based upon the modifications the ALJ made to Dr. Mayus' opinion, the vocational expert opined that the hypothetical individual would be able to return to plaintiff's other past relevant jobs, and the expert identified other jobs that exist in significant numbers in the national economy that such an individual could perform. Plaintiff does not argue that the expert's testimony is incorrect.

In passing, I note that when the ALJ adopted all of Dr. Mayus' opinion, modifying it to limit the lifting, carrying, walking, standing, and sitting so as to be consistent with that required for sedentary, the vocational expert identified sedentary jobs that such a hypothetical person could perform.

In summary, I find substantial evidence supports the ALJ's RFC and the ALJ did not need to supplement the record with additional medical opinions.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

February 21, 2014
Kansas City, Missouri